Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **PLAZA BARBOSA, INC. ET AL.**<br><br>Parte apelante<br><br>v.<br><br>**FIRSTBANK PUERTO RICO**<br><br>Parte apelada | **TA2025AP00613** | *APELACIÓN*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.<br>**K AC2016-0834**<br><br>Sobre:<br><br>Incumplimiento de Contrato, Daños y Perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio.

Pérez Ocasio, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 27 de abril de 2026.

Comparece ante nos, Plaza Barbosa Inc. et al.[1], en adelante Plaza Barbosa o la parte apelante y solicita que revisemos la *Sentencia* dictada por el Tribunal de Primera Instancia de San Juan, en adelante TPI-SJ, el 30 de septiembre de 2025. Mediante dicha Sentencia, el Foro Primario declaró *No Ha Lugar* la Demanda presentada por Plaza Barbosa contra FirstBank Puerto Rico[2], en adelante FirstBank o la parte apelada.

Por los fundamentos que expondremos a continuación, *confirmamos* la determinación recurrida.

### I.

El 29 de octubre de 2021, Plaza Barbosa presentó la cuarta enmienda a la demanda, *Demanda Enmendada Depurada,* contra FirstBank, en la cual alegó incumplimiento de contrato de

---

[1] Plaza Barbosa Inc. es una corporación con fines de lucro, debidamente autorizada para hacer negocios en el Estado Libre Asociado de Puerto Rico y es dueña del Centro Comercial Plaza Barbosa, Inc., localizado en la Avenida Barbosa #27, Hato Rey, Puerto Rico.
[2] FirstBank Puerto Rico, es una institución bancaria comercial, autorizada a operar en Puerto Rico bajo las disposiciones de la Ley Núm. 55 de 12 de mayo de 1933, según enmendada, conocida como *Ley de Bancos.*

arrendamiento y reclamó daños y perjuicios. En síntesis, sostuvo que las partes acordaron el establecimiento de una sucursal bancaria en un local propiedad de la parte apelante.

Surge del expediente que, 18 de octubre de 2007, las partes firmaron un contrato de arrendamiento por la cantidad de diecinueve mil ochocientos cuarenta y siete dólares con quince centavos ($19,847.15), a un término de diez (10) años, con un aumento anual de dos por ciento (2%), prorrogable subsiguientemente a otros veinte (20) años adicionales.

Adujo que dicho acuerdo conllevó inversiones sustanciales y la asunción de obligaciones financieras. Alegó, además, que FirstBank alteró las condiciones pactadas y, eventualmente, decidió no ocupar el local, lo que le ocasionó pérdidas económicas a Plaza Barbosa.[3]

El 4 de enero de 2022, FirstBank presentó su *Contestación a Cuarta Demanda Enmendada*, mediante la cual negó las alegaciones esenciales y sostuvo que no incurrió en incumplimiento contractual. En particular, alegó que la decisión de no continuar con la apertura de la sucursal respondió a exigencias regulatorias del Federal Deposit Insurance Corporation, en adelante, FDIC, en el contexto de un proceso de supervisión bancaria.[4]

Tras varias incidencias procesales, el 6 de febrero de 2023, FirstBank presentó una *Moción de Sentencia Sumaria*, mediante la cual solicitó la desestimación de la reclamación en su contra. En apoyo de su solicitud, sostuvo que no existía controversia real sobre los hechos materiales y que, como cuestión de derecho, habían actuado conforme al contrato de arrendamiento al darlo por terminado tras no obtener la autorización del FDIC para operar la sucursal. Además, alegó que Plaza Barbosa no mitigó los daños

---

[3] Entrada 1 de SUMAC TA, anejo II, pág. 16-24.
[4] *Íd.*, anejo III, págs. 25-30.

reclamados. En consecuencia, solicitó que se dictara sentencia sumaria a su favor.[5]

El 18 de septiembre de 2023, Plaza Barbosa, presentó una *Moción en Oposición a la Solicitud de Sentencia Sumaria*, en la cual sostuvo que existían controversias reales sobre hechos materiales que impiden la adjudicación sumaria del caso. En síntesis, impugnó la supuesta denegatoria del FDIC, aduciendo que la evidencia demuestra que FirstBank retiró voluntariamente la solicitud para establecer la sucursal, sin que mediara una determinación formal. Argumentó, además, que la prueba documental y testifical, que incluye las deposiciones y evidencia obtenida mediante el *Freedom of Information Act*, en adelante, FOIA, demostró inconsistencias en las alegaciones de FirstBank y permitió inferir un incumplimiento contractual, por lo que procedía la celebración de un juicio en sus méritos. [6]

Al día siguiente, el 19 de septiembre de 2023, Plaza Barbosa presentó su propia *Moción de Sentencia Sumaria,* mediante la cual reiteró los planteamientos esbozados en su oposición y solicitó que se dicte sentencia a su favor. En esencia, sostuvo que no existe controversia material de hechos en cuanto a que FirstBank incumplió el contrato de arrendamiento al darlo por terminado sin que se hubiese activado válidamente la cláusula resolutoria, toda vez que no ocurrió una denegatoria del FDIC. A tales efectos, argumentó que el retiro de la solicitud no equivale a una denegatoria formal y que, conforme a la prueba sometida, el Banco actuó unilateralmente en contravención de lo pactado, ocasionándole daños económicos.

Posteriormente, el 24 de octubre de 2023, FirstBank presentó una *Respuesta Consolidada* a la oposición de Plaza Barbosa. En

---

[5] Entrada 1 de SUMAC TA, anejo IV, págs. 31-44.
[6] *Íd.,* anejo IV, págs. 226-245

suma, reiteró que no existe controversia material de hechos y que procede dictar sentencia sumaria a su favor. Argumentó que, conforme al reglamento del FDIC, la instrucción de retirar la solicitud equivalía a una denegatoria que activaba la cláusula resolutoria del contrato. De igual forma, sostuvo que la prueba sometida por Plaza Barbosa no logró controvertir los hechos esenciales previamente establecidos, sino que se limita a plantear interpretaciones especulativas. En consecuencia, insistió en que actuó conforme a derecho al dar por terminado el contrato y que las reclamaciones de la parte apelante carecían de mérito, por lo que solicitó la desestimación sumaria de la demanda. [7]

En esa misma fecha, FirstBank presentó una *Moción Ómnibus* mediante la cual compareció en respuesta tanto a la *Moción de Sentencia Sumaria* presentada por Plaza Barbosa como la *Oposición de Sentencia Sumaria* de FirstBank. En dicho escrito, FirstBank sostuvo, en síntesis, que no existen controversias reales sobre hechos materiales que impidan la adjudicación sumaria del caso, reiterando que la terminación del contrato de arrendamiento se produjo conforme a la cláusula resolutoria pactada. A tales efectos, FirstBank argumentó que el FDIC, les ofreció la opción de retirar la solicitud de apertura de la sucursal en lugar de emitir una denegatoria formal, lo cual presuntamente constituía denegatoria suficiente para activar la referida cláusula contractual. Asimismo, refutó las alegaciones de Plaza Barbosa sobre la inexistencia de una instrucción del FDIC para retirar la solicitud. Argumentó que la prueba de la parte apelante descansaba en inferencias, especulaciones y alegaciones no sustentadas, y que no lograban controvertir los hechos materiales propuestos por FirstBank.[8]

---

[7] Entrada 1 de SUMAC TA, anejo IV, págs. 246-269.
[8] *Íd.,* anejo VIII, págs. 270-278.

El 6 de noviembre de 2023, Plaza Barbosa presentó una moción en oposición a las objeciones formuladas por FirstBank respecto a su solicitud de *Sentencia Sumaria.* En dicho escrito, la parte demandante sostuvo que las objeciones de FirstBank carecían de méritos. Reiteró que la actuación de FirstBank no activaba la cláusula resolutoria del contrato, por lo que subsistía el incumplimiento contractual alegado. [9]

El 2 de agosto de 2024 el TPI-SJ emitió una *Resolución* mediante la cual atendió las múltiples mociones de sentencia sumaria presentadas por las partes. Tras evaluar los escritos, las objeciones y la evidencia sometida, el Foro Primario concluyó que no procedía dictar sentencia sumaria a favor de ninguna de las partes, al determinar que subsistían controversias de hechos materiales que requerían la celebración de un juicio en su fondo. En consecuencia, denegó las solicitudes de sentencia sumaria y ordenó la continuación de los procedimientos.[10]

Luego de los trámites procesales correspondientes y la celebración del juicio[11] en su fondo durante los días, 17, 20 y 21 de marzo de 2025 y el 1 de mayo de 2025, el TPI-SJ emitió *Sentencia*, el 30 de septiembre de 2025, mediante la cual declaró *No Ha Lugar* la demanda presentada por Plaza Barbosa contra FirstBank. El Foro Primario concluyó que *no se configuró un incumplimiento contractual imputable a la parte demandada,* al determinar que la actuación de FirstBank respondió a exigencias regulatorias del FDIC dentro de un proceso de supervisión bancaria. Asimismo, resolvió *que las disposiciones contractuales no exigían una denegatoria formal por escrito por parte del FDIC como condición para justificar la retirada de la solicitud de apertura de la sucursal.* En consecuencia,

---

[9] Entrada 1 de SUMAC TA, anejo IX, págs. 279-301.
[10] *Íd.*, anejo X, págs. 302-322.
[11] Entrada 10 de SUMAC TA, anejos 1-4.

determinó que la parte demandante asumió el riesgo comercial inherente al proyecto y que no procedía la concesión de daños. [12]

Inconformes con la determinación del Foro de Primera Instancia, el 14 de octubre de 2025, Plaza Barbosa presentó una *Moción de Reconsideración* mediante la cual alegó que el TPI-SJ incurrió en errores de hecho y derecho al adjudicar el caso por la vía sumaria, particularmente en torno a la interpretación de la cláusula resolutoria del contrato de arrendamiento y la determinación de que no existían controversias materiales de hechos. En consecuencia, solicitó la revocación de la *Sentencia.*[13]

El 31 de octubre de 2025, FirstBank presentó una *Oposición a Moción de Reconsideración* y sostuvo que la determinación del Foro Primario fue correcta en derecho y que no existían controversias materiales de hechos, por lo que procedía mantener la Sentencia dictada.[14]

Así las cosas, el 4 de noviembre de 2025 el TPI-SJ emitió una *Resolución* mediante la cual declaró *No Ha Lugar* la solicitud de reconsideración, manteniendo inalterada la determinación previamente emitida en el caso.

Aún inconforme, el 1 de diciembre de 2025, la parte apelante presentó el recurso de *Apelación* que nos ocupa, en el cual formuló los siguientes señalamientos de error:

> **PRIMER ERROR**: El Honorable Glenn Velázquez Morales erró al desestimar el presente caso en contravención de la Regla 36.4 de las de Procedimiento Civil, al descartar las Determinaciones de hechos y el Derecho Aplicable en la Resolución emitida por el Honorable Castro Callejo al resolver varias Sentencias Sumarias de las partes ante su consideración, sin adjudicar la excepción de la citada Regla 36.4 cuando se comete una injusticia en derecho que, permite alterar la Resolución previamente dictada por otro juez.

> **SEGUNDO ERROR**: El Honorable Velázquez Morales erró al determinar que, se puede implementar una Cláusula Resolutoria unilateralmente en un contrato en marcha durante cinco (5) años, el cual fue cancelado sin justa causa,

---

[12] Entrada 10 de SUMAC TA, anejo I, págs. 1-15.
[13] Entrada 1 de SUMAC TA, anejo XII, págs. 325-357.
[14] *Íd.*, anejo XII, págs. 358-371.

en total contradicción de la Resolución del Honorable Castro Callejo.

**TERCER ERROR**: El Honorable Velázquez Morales erró al resolver la controversia, al actuar en contra del derecho vigente, violando normas federales del FDIC y fundamentando su decisión en testimonios favorables para la parte apelada. ante su consideración contraria a derecho, violando normas Federales del FDIC y justificando la misma a base de los testimonios convenientes de la parte Apelada.

**CUARTO ERROR**: El Honorable Velázquez Morales erró al no resolver en su sentencia el incumplimiento contractual evidenciado con la prueba documental estipulada del propio banco Apelado que, reconoce dicho incumplimiento y fue plasmada en la Resolución del Honorable Castro Callejo.

**QUINTO ERROR**: El Honorable Velázquez Morales incurrió en un error al omitir pronunciarse sobre el incumplimiento contractual demostrado con la prueba documental presentada por el banco apelado, prefiriendo considerar el Consent Order como un convenio colaborativo entre el FDIC y el banco, aunque este no resulta válido para cancelar contratos vigentes.

**SEXTO ERROR**: El Honorable Velázquez Morales erró al no considerar la importancia de los documentos obtenidos por el "Freedom of Information Act" (FOIA), y otros del FDIC, claves para refutar a la parte Apelada.

**SEPTIMO ERROR**: Se considera que el Honorable Juez Velázquez Morales cometió un error al no advertir la gravedad del incumplimiento contractual por parte del banco apelado. El retiro voluntario de la solicitud para operar una sucursal en el Centro Comercial Plaza Barbosa —instalación diseñada para satisfacer las necesidades específicas del banco—constituyó injustificada del contrato vigente.

El 2 de diciembre de 2025, Plaza Barbosa presentó una moción al amparo de la Regla 76 del Reglamento del Tribunal de Apelaciones, mediante el cual solicitó la preparación y notificación de la transcripción de la prueba oral, al sostener que la controversia requería la evaluación de los testimonios vertidos en juicio.[15]

En atención a ello, el 8 de diciembre de 2025, emitimos una *Resolución* concediendo a la parte apelante hasta el 12 de diciembre de 2025 para presentar la trascripción e informar si someterían un alegato suplementario.[16]

El 14 de enero de 2026 la parte apelante presentó la transcripción del juicio[17] y el 12 de febrero de 2026, presentó su

---

[15] Entrada 2 de SUMAC TA.
[16] Entrada 3 de SUMAC TA.
[17] Entrada 10 de SUMAC TA.

escrito suplementario.[18] Posteriormente, el 13 de marzo de 2026, FirstBank presentó su alegato en oposición, mediante el cual solicitó la confirmación de la sentencia apelada.[19]

Perfeccionado el recurso de autos, y con el beneficio de la transcripción de la prueba oral, procedemos a resolver.

## II.

### A. Apelación Civil

Las Reglas de Procedimiento Civil de Puerto Rico se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio, entiéndase las alegaciones, mociones, descubrimiento de prueba, vista evidenciaria, sentencia, reconsideración, *apelación*, y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La etapa de la *apelación* se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel que se presenta ante un foro de mayor jerarquía cuando se solicita la revisión de una sentencia, o un dictamen final, emitido por el Foro de Primera Instancia. Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA, Ap. VIII, R. 52; *Freire Ruiz et al. v. Morales, Hernández*, 2024 TSPR 129, 215 DPR ___ (2024); *González Pagán v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019). Véase, además, R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de certiorari. Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene

---

[18] Entrada 18 de SUMAC TA.
[19] Entrada 21 de SUMAC TA.

obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, se reconoce que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones, cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017). Regla 13(A) del Reglamento del Tribunal de Apelaciones, supra, pág. 22; Art. 4.006(a) Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003, 4 LPRA sec. 24y.

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M. P.F.M., et al. v. Colegio et al.*, 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. *Bathia Gautier v. Gobernador*, 199 DPR 59, 182 (2017); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

**B. Sentencia Sumaria**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Conklin et al., v. Passalacqua et al.,* 2026 TSPR 18, 217 DPR __ (2026); *Negrón Castro y otros v. Soler Bernardini y otros,* 2025 TSPR 96, 216 DPR ___ (2025); *Coop. Seguros Múltiples y otros v. ELA y*

*otros,* 2025 TSPR 78, 216 DPR ___ (2025); *Consejo Tit. v. Rocca Div. Corp. et als,* 2025 TPSR 6, 215 DPR ___ (2025); *BPPR v. Cable Media,* 2025 TSPR 1, 215 DPR ___ (2025); *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 993 (2023); *Birriel Colón v. Econo y otro*, 213 DPR 80, 90 (2023); *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *Oriental Bank v. Caballero García,* 212 DPR 671, 678 (2023); *González Meléndez v. Mun. San Juan et al.,* 212 DPR 601, 610 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en un juicio plenario y el derecho así lo permita. *BPPR v. Zorrilla Posada y otro,* 214 DPR 329, 337 (2024); *Cruz, López v. Casa Bella y otros*, supra, pág. 993; *Oriental Bank v. Caballero García,* supra, pág. 678; *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 980. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra.*

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.*, supra, pág. 979; *Ramos Pérez v. Univisión,* 178 DPR 200, 214 (2010). Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Id.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3 de Procedimiento Civil, supra; *Oriental Bank v. Caballero García,* supra, pág. 679; *Pérez Vargas v. Office Depot,* 203 DPR 687, 698 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *BPPR v. Cable Media,* supra; *BPPR v. Zorrilla Posada y otro,* supra; *León Torres v. Rivera Lebrón,* supra, pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Id.* Es decir, el hecho de no oponer a un petitorio sumario no implica que este necesariamente proceda, sin embargo, si no se demuestra

que existen controversias sustanciales sobre los hechos materiales, nada impide al foro sentenciador de dictar sentencia sumaria. *Ramos Pérez v. Univisión*, supra, pág. 215.

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra, pág. 44. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil, supra. *Id.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Id.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil, *supra*, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *E.L.A. v. Cole*, supra, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá, cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Soto y otros v. Sky Caterers,* 2025 TSPR 3, 215 DPR___(2025); *Cruz, López v. Casa Bella y otros*, supra, pág. 993; *Acevedo y otros v. Depto. Hacienda y otros,* 212 DPR 335, 350 (2023); *Segarra Rivera v. Int'l. Shipping et al.,* supra. Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens,* 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o casos que involucren cuestiones de interés público". *Id.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otros v. ELA y otros*, 211 DPR 455, 471-472 (2023).

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el Foro Primario. *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, "nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria". *Conklin et al., v. Passalacqua et al.,* supra; *Negrón Castro y otros v. Soler Bernardini y otros,* supra; *Batista Valentín v. Sucn. Batista Valentín y otros,* 2025 TSPR 93, 216 DPR ___(2025). *Coop. Seguros Múltiples y otros v. ELA y otros,* supra; *Consejo Tit. v. Rocca Div. Corp. et als,* supra; *Soto y otros v. Sky Caterers,* supra; *BPPR v. Cable Media, BPPR v. Zorrilla Posada y otro,* supra; *Cruz, López v. Casa Bella y otros,* supra, pág. 994. Por ello, nuestra revisión es una *de novo,* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, supra, y su jurisprudencia interpretativa. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar de *novo* si el foro primario aplicó correctamente el derecho.

### C. Contratos en General

En nuestra jurisdicción rige el principio de la autonomía contractual y *pacta sunt servanda. Conklin et al., v. Passalacqua et al.,* supra; *Hope Tucker v. Money Group, LLC* et al., 2026 TSPR 9, 217 DPR ___(2026). Las partes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, la moral y al orden público. Artículo 1207 del Código Civil de 1930, supra, ant. sec. 3372[20]; *Batista Valentín v. Sucn. Batista Valentín y otros,* supra. *Betancourt González v. Pastrana Santiago*, 200 DPR 169, 182 (2018). Los contratos tienen fuerza de ley entre las partes contrayentes, ante sus sucesores y ante terceros quienes vienen obligadas a observar sus términos en la forma que dispone la ley. Artículo 1044 del

---

[20] El 28 de noviembre de 2020, entró en vigor el nuevo Código Civil de Puerto Rico, Ley Núm. 55-2020. Sin embargo, los hechos del caso de epígrafe ocurrieron previo a la fecha de vigencia del citado estatuto, por lo que haremos referencia y esbozaremos el derecho a la luz del derogado Código.

Código Civil de 1930, 31 LPRA ant. sec. 2994; *Merchant Advance, LLC v. Conceptos Cuisine, LLC et al.,* 2026 TSPR 15, 217 DPR ___(2026); *MCS Advantage, Inc. v. Fossas Blanco,* 211 DPR 135, 166 (2023); *Feliciano v. Luxury Hotels International of Puerto Rico Inc.,* 210 DPR 712, 728 (2022).

Para que exista un contrato válido deben concurrir los elementos siguientes: el consentimiento de las partes sobre el objeto y la causa. Artículo 1213 del Código Civil de 1930, supra, ant. sec. 3391; *Batista Valentín v. Sucn. Batista Valentín y otros,* supra; *Cruz, López v. Casa Bella y otros,* supra; *Pérez Rodríguez v. López Rodríguez et al.,* 210 DPR 163, 186 (2022); *Demeter Int'l v. Srio. Hacienda,* supra, pág. 727; *Negrón Vélez v. ACT,* 196 DPR 489, 505 (2016).

Estos requisitos se refieren a que el acuerdo sea consensual; que exista como objeto una polémica judicial o extrajudicial entre las partes que dé lugar a la transacción, y su causa que consiste en eliminar la controversia mediante las concesiones recíprocas. *Negrón Vélez v. ACT,* supra, pág. 505; *Neca Mortg. Corp. v. A&W Dev. S.E.,* 137 DPR 860, 870-871 (1995).

Las cláusulas del contrato deben leerse de forma integrada e interpretarse las unas por las otras, resolviendo cualquier ambigüedad de modo que todas sus partes surtan efecto. Artículo 1237 del Código Civil de 1930, supra, ant. sec. 3475. Cuando el texto de un contrato es claro y no admite ambigüedad, la interpretación debe ceñirse al sentido literal de sus estipulaciones, por reflejar adecuadamente la intención de las partes. Artículo 1233 del Código Civil de 1930, ant. sec. 3471; *Conklin et al., v. Passalacqua et al.,* supra; *Hope Tucker v. Money Group, LLC* et al., supra; *Cruz, López v. Casa Bella y otros,* 213 DPR 980, 994-995 (2024). Este principio rige igualmente en los contratos de adhesión, los cuales, pese a su naturaleza, deben aplicarse conforme a sus

cláusulas, cuando son claras y libre de ambigüedad. *Barreto Nieves et al. v. East Coast,* 213 DPR 852, 864 (2024).

En ese mismo marco interpretativo, nuestro Tribunal Supremo ha reiterado la validez de las cláusulas resolutorias —tanto unilaterales como bilaterales— aun cuando permitan la terminación sin justa causa, siempre que así haya sido pactado por las partes. *Mun. de Ponce v. Gobernador,* 136 DPR 776, 789 (1994); *Flores v. Municipio de Caguas,* 114 DPR 521, 529 (1983). Su eficacia depende del cumplimiento estricto de las condiciones acordadas para su ejercicio. Así se ilustró en *Rodríguez García v. UCA,* 200 DPR 929, 943-944 (2018), donde avaló una cláusula que facultaba a cualquiera de los contratantes a dar por terminada la relación en cualquier momento, condicionada únicamente a una notificación previa de noventa (90) días. En ese contexto, el análisis judicial se limitó a verificar si la parte que invocó la cláusula observó el requisito pactado, concluyéndose que no procedía su ejercicio por incumplimiento con el término de notificación establecido.

### D. Incumplimiento de Contrato

Nuestra jurisprudencia ha reiterado que los contratos se perfeccionan por el mero consentimiento y, desde ese momento, las partes quedan obligadas no solo al cumplimiento de lo expresamente pactado, sino también a todas aquellas consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley. *Batista Valentín v. Sucn. Batista Valentín y otros,* supra; *Pérez Rodríguez v. López Rodríguez et al.*, supra, pág. 230; *Betancourt González v. Pastrana Santiago,* supra, pág. 182. En ese sentido, un contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras a dar alguna cosa o a prestar algún servicio. *Batista Valentín v. Sucn. Batista Valentín y otros,* supra*; Pérez Rodríguez v. López Rodríguez et al.*, supra, pág. 230; *Demeter Int'l v. Srio. de Hacienda,* supra, págs. 726-727.

Asimismo, nuestro Tribunal Supremo ha reiterado que, en materia contractual, la ley primaria entre las partes es su voluntad. Por consiguiente, los tribunales no pueden relevar a una parte del cumplimiento de lo pactado cuando el acuerdo es legítimo y no adolece de vicio alguno. *Oriental Financial v. Nieves*, 172 DPR 462, 471 (2007); *De Jesús González v. A.C.*, 148 DPR 255, 271 (1999).

Ahora bien, el cuerpo normativo aplicable a este caso dispuso que cuando una de las partes en un acuerdo incumple con su deber de entregar o hacer, incurre en mora, desde que el acreedor exija el cumplimiento de la obligación. Artículo 1053 del Código Civil de 1930, supra, ant. sec. 3017. Importante es señalar que el acreedor no vendrá obligado a reclamarle a su deudor para que exista la mora, cuando del contrato o la Ley, lo declaren expresamente. Id.

Como consecuencia del incumplimiento contractual, nuestro Alto Foro ha reconocido que el perjudicado tiene la facultad, como regla general, de exigir el cumplimiento específico de lo pactado, o la resolución de la obligación. *Ramírez v. Club Cala de Palmas*, 123 DPR 339, 347 (1989). No solo eso, la norma estatutaria y el derecho jurisprudencial ha reconocido que, en estos casos, la parte a la que se le incumple puede también solicitar el resarcimiento de daños. Id.; Artículo 1054 del Código Civil de 1930, supra, ant. sec. 3018. Véase, además, *800 Ponce de León v. AIG,* 205 DPR 163, 181 (2020).

### E. Apreciación de la prueba

La Regla 42.2 de Procedimiento Civil, supra, dispone en cuanto a las determinaciones de hechos basadas en testimonio oral que "no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos". Cónsono con la antedicha disposición reglamentaria, ha sido norma reiterada que "[e]n ausencia de error, prejuicio o parcialidad, los tribunales apelativos no

intervendr[emos] con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad que efectúe el Tribunal de Primera Instancia". *Ramírez Ferrer v. Conagra Foods PR,* 175 DPR 799, 811 (2009). Véase, además, *Barreto Nieves et al. v. East Coast,* 213 DPR 852, 889 (2024); *SLG Rivera-Pérez v. SLG Díaz-Doe et al.,* 207 DPR 636, 657 (2021). *Torres Vélez v. Soto Hernández,* 189 DPR 972, 990 (2013). Entretanto, precisa recordar que las decisiones judiciales están revestidas de una presunción de corrección. *Santiago Maldonado v. Alvelo Rivera,* 2026 TSPR 13, 217 DPR __(2026); *Vargas v. González,* 149 DPR 859, 866 (1999).

Ahora bien, lo anterior no implica que las determinaciones del foro a quo no sean revisables o inmutables. Aunque respetables las determinaciones del juzgador de hechos, estas "no tienen credenciales de inmunidad frente a la función revisora de este Tribunal". *Vda. de Morales v. De Jesús Toro,* 107 DPR 826, 829 (1978). La intervención de un foro apelativo con la evaluación de la prueba testifical procederá "en casos en los que luego de un análisis integral de la prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia". *Sucn. Rosado v. Acevedo Marrero,* 196 DPR 884, 918 (2016). Véase, además*, Rivera Menéndez v. Action Service,* 185 DPR 431, 444 (2012).

Igualmente podemos dejar sin efecto las determinaciones de hechos realizadas por el foro de primera instancia, siempre que "del examen de la totalidad de la evidencia [quedemos] definitiva y firmemente convencido[s] que un error ha sido cometido, como es el caso en que las conclusiones de hecho[s] están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Maryland Casualty Co. v. Quick Const. Corp.*, 90 DPR 329, 336 (1964). Recientemente, nuestro más Alto Foro expresó que "el error manifiesto ocurre cuando el foro apelativo

queda convencido de que se cometió un error, a pesar de que haya evidencia que sostenga las conclusiones de hecho del tribunal, porque existe un conflicto entre las conclusiones y el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 779 (2022).

Como parte de la naturaleza inherente de este foro apelativo intermedio, no celebramos juicios plenarios, ni presenciamos el testimonio oral de los testigos, ni dirimimos credibilidad, sino que contamos, de ordinario, con "récords mudos e inexpresivos". *SLG Rivera Carrasquillo v. A.A.A.,* 177 DPR 345, 356 (2009). Aunque este Tribunal no tiene la facultad de evaluar el lenguaje corporal, expresiones o demás elementos subjetivos, sí nos encontramos en la misma posición del foro primario para evaluar la prueba documental o pericial que fundamentan las determinaciones de hecho. *Sucn. Rosado v. Acevedo Marrero, supra,* pág. 918; *González Hernández v. González Hernández,* 181 DPR 746, 777 (2011). Para que proceda la revocación de un dictamen realizado por el foro primario, la parte "apelante tiene que señalar y demostrar la base para ello". Quien "cuestione una determinación de hechos realizada por el foro primario debe señalar el error manifiesto o fundamentar la existencia de pasión, perjuicio o parcialidad". *Barreto Nieves et al. v. East Coast,* 213 DPR 852, 889 (2024); *SLG Rivera Carrasquillo v. A.A.A.,* supra, pág. 356.

**III.**

En su *primer señalamiento de error,* la parte apelante sostiene que el TPI-SJ incidió al apartarse de las determinaciones contenidas en la *Resolución* emitida al atender las solicitudes de sentencia sumaria, en contravención de la Regla 36.4 de Procedimiento Civil, *supra. No le asiste la razón.*

Surge del expediente que, mediante la referida *Resolución,* el Foro Primario denegó las solicitudes de sentencia sumaria de

ambas partes, al concluir que subsistían controversias materiales de hecho que impedían la adjudicación sumaria del caso. A esos efectos, identificó los asuntos pendientes de dilucidar, entre estos, la intención del Banco al retirar la solicitud ante el FDIC, las razones para ello, si dicha actuación constituía un subterfugio para incumplir el contrato, y si la alegada intervención del regulador satisfacía lo dispuesto en la cláusula resolutoria.

Así las cosas, lejos de adjudicar el fondo del pleito, la *Resolución* del 2 de agosto de 2024, delimitó las controversias que debían resolverse mediante la prueba en un juicio en su fondo. Por consiguiente, las expresiones contenidas en dicho dictamen no constituyen determinaciones finales sobre la responsabilidad de las partes, sino un marco preliminar sujeto a la prueba que posteriormente se presentaría.

Celebrado el juicio, el juez sentenciador tuvo ante sí la oportunidad de aquilatar la prueba testifical y documental relacionada precisamente con esas controversias. A base de ello, emitió determinaciones de hecho y conclusiones de derecho que atendieron los asuntos que habían quedado pendientes tras la etapa sumaria. En ese contexto, no puede sostenerse que el tribunal "descartó" la *Resolución* previa, sino que resolvió las controversias que dicha resolución había reservado para la adjudicación posterior.

Contrario a lo planteado por Plaza Barbosa, el expediente no refleja que el foro primario alterara determinaciones previamente fijadas como incontrovertidas, ni que ignorara el alcance de la Regla 36.4. Por el contrario, la secuencia procesal evidencia que, al no proceder la adjudicación sumaria, el tribunal actuó conforme al trámite ordinario: permitió el desfile de prueba y, a partir de esta, resolvió el caso en sus méritos. En consecuencia, no se configura violación alguna a la Regla 36.4 de Procedimiento Civil, *supra,* ni

actuación errónea del Tribunal de Primera Instancia. *Procede concluir que no se cometió el primer error señalado.*

Por la estrecha relación entre el *segundo y tercer señalamiento de error*, procedemos a discutirlos conjuntamente. Los errores se reducen a determinar si la terminación del contrato de arrendamiento por parte de FirstBank se efectuó conforme a la cláusula resolutoria pactada o, como sostiene la parte apelante, de manera arbitraria y en contravención del derecho aplicable.

Del expediente surge que las partes acordaron expresamente que la operación de la sucursal estaba sujeta a la obtención de la autorización correspondiente del FDIC y que la falta de dicha autorización facultaría a FirstBank a dar por terminado el contrato. Asimismo, no está en controversia que el FDIC no autorizó la apertura de la sucursal y que, en su lugar, instruyó al Banco a retirar la solicitud, lo cual este realizó formalmente.

Ante estos hechos, lo determinante es que la autorización requerida no se realizó. El contrato no condicionó la activación de la cláusula a una denegatoria formal específica ni a un procedimiento particular, por lo que no corresponde añadir requisitos no contemplados por las partes. Así, el hecho de que el FDIC haya canalizado su decisión mediante el retiro de la solicitud —en lugar de emitir una denegatoria formal— no altera la consecuencia jurídica prevista contractualmente.

En consecuencia, al no obtenerse la autorización necesaria, se configuró la condición resolutoria acordada, lo que facultó a FirstBank a dar por terminado el contrato conforme a sus términos. Bajo ese escenario, la alegación de que la terminación fue "sin justa causa" no tiene efecto jurídico, pues precisamente las partes pactaron ese supuesto como una causa válida de resolución.

De igual forma, los planteamientos de la parte apelante sobre alegadas violaciones a normativa federal del FDIC y la valoración de

la prueba no generan una controversia material de hechos. Aun si se examinaran en sus méritos, no desvirtúan el hecho esencial de que la autorización no fue concedida, ni impiden la aplicación de la cláusula resolutoria conforme a lo pactado. Por tanto, el Foro Primario no erró al concluir que FirstBank ejerció válidamente su derecho de terminación contractual. En consecuencia, el segundo y tercer error no se cometieron.

Por su estrecha relación, discutiremos conjuntamente los *señalamientos de error cuarto, quinto y séptimo.* Plaza Barbosa sostiene que el TPI-SJ erró al concluir que FirstBank no incurrió en incumplimiento contractual, a pesar de la prueba documental presentada, y al considerar el efecto del *Consent Order* en su análisis. *No le asiste la razón.*

Para que prospere una reclamación por incumplimiento de contrato, es indispensable que se demuestre que la parte demandada incumplió una obligación exigible conforme a lo pactado. Sin embargo, del expediente surge que la obligación principal de FirstBank —operar la sucursal— estaba condicionada a la obtención de la autorización del FDIC. En ausencia de dicha autorización, la relación contractual quedaba sujeta a la cláusula resolutoria acordada por las partes. Como se discutió anteriormente, el Foro Primario determinó, a base de la prueba desfilada en el juicio, que el FDIC no autorizó la operación de la sucursal y que instruyó al Banco a retirar la solicitud correspondiente. A partir de esa determinación, concluyó que se activó la condición resolutoria del contrato. Bajo ese escenario, no puede hablarse de incumplimiento, pues la terminación del contrato no obedeció a una conducta arbitraria del Banco, sino al acaecimiento de una condición prevista contractualmente.

En cuanto a la alegación de que el TPI-SJ ignoró prueba documental que evidenciaba incumplimiento, el expediente refleja

que el Foro Primario evaluó dicha evidencia en conjunto con la prueba testifical. En particular, atendió las comunicaciones entre FirstBank y Plaza Barbosa, y concluyó que cualquier imprecisión en estas respondía a la falta de conocimiento personal de algunos testigos y no a una intención de incumplir el contrato. Dicha apreciación probatoria no revela error manifiesto ni justifica la intervención de este Foro Revisor.

Por otro lado, la referencia al *Consent Order* no constituyó el fundamento determinante de la decisión, sino un elemento contextual para entender la relación entre FisrtBank y el FDIC. El Foro de Primera Instancia no resolvió que dicho acuerdo, por sí solo, justificara la terminación del contrato, sino que lo consideró como parte del trasfondo que explica por qué la autorización no fue concedida. En consecuencia, la impugnación de la parte apelante en torno a este aspecto no altera el hecho esencial de que la condición resolutoria se configuró. Por ello, no puede sostenerse que existió un incumplimiento injustificado que dé lugar a responsabilidad contractual. En consecuencia, los *errores cuarto, quinto y séptimo no se cometieron.*

En el *sexto señalamiento de error,* Plaza Barbosa sostiene que el TPI-SJ erró al no otorgar el peso que, a su juicio, merecían los documentos obtenidos mediante el FOIA, los cuales entiende refutan la versión presentada por FirstBank. *No le asiste la razón.*

Del expediente surge que el Foro Primario tuvo ante sí la evidencia documental obtenida mediante FOIA y la evaluó en conjunto con la totalidad de la prueba desfilada en el juicio, incluyendo la prueba testifical. A base de ese análisis, concluyó que dicha evidencia no desvirtuaba la determinación de que el FDIC no autorizó la operación de la sucursal ni la conclusión de que la solicitud fue retirada conforme a las circunstancias discutidas en el caso.

La parte apelante interesa que se le atribuya carácter concluyente a la evidencia obtenida mediante FOIA, bajo la premisa de que la ausencia de determinadas expresiones o documentos en dicho expediente administrativo implica que los eventos alegados por el Banco no ocurrieron. Sin embargo, esa inferencia no es obligatoria ni desplaza la facultad del juzgador de hechos de aquilatar la prueba en su totalidad. La valoración de esa evidencia, frente a los testimonios presentados y demás documentos admitidos, correspondía al Foro Primario.

En ese sentido, la parte apelante no demostró que la apreciación de la prueba realizada por el TPI-SJ adolezca de error manifiesto, ni que exista un conflicto con la totalidad de la evidencia que justifique la intervención de este Foro. Por el contrario, su planteamiento se limita a proponer una interpretación distinta del alcance de la prueba documental, lo cual resulta insuficiente para desplazar las determinaciones del juzgador de hechos.

Por tanto, concluimos que el foro primario no erró al evaluar la evidencia obtenida mediante FOIA ni al determinar que esta no alteraba las conclusiones alcanzadas en el caso. En consecuencia, *el sexto error no se cometió.*

**IV.**

Por los fundamentos antes esbozados, *confirmamos el dictamen apelado.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones